# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| | § | Civil Action No. 4:17-CV-00495 |
| v. | § | Judge Mazzant |
| | § | |
| BILLY R SIMS, BS20, INC., and | § | |
| LEGENDARY Q BRANDS, LLC | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Legendary Q Brands, LLC's Special Appearance and Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) (Dkt. #9). After reviewing the relevant pleadings, the Court finds that the motion to dismiss under Rule 12(b)(2) should be granted.

## BACKGROUND

Plaintiff brought this suit seeking to reduce to judgment the outstanding federal tax liabilities assessed against Defendant Billy R. Sims ("Sims") and enforce the federal tax liens and obtain remedies under 28 U.S.C. § 3001 et seq., upon certain real and personal property, including certain contracts held by Sims' holding company, BS20, Inc. ("BS20") and contracts with Legendary Q Brands, LLC ("Legendary"). Sims is a resident of Lewisville, Texas. He is a former American college and professional football player. BS20 is an S-Corporation, incorporated in 2011 under the laws of Oklahoma. Sims is the 100% shareholder of BS20.

Legendary is an Oklahoma limited liability company, with its principal place of business in Tulsa, Oklahoma. The sole member of Legendary is Jeff Jackson, who is a resident of Oklahoma. Legendary is the owner and franchisor of Billy Sims BBQ restaurants (Dkt. #1 at p. 5).

The primary business of Legendary is the operation and management of Billy Sims BBQ restaurants throughout the States of Oklahoma, Kansas, Iowa, Missouri, and Colorado.

Plaintiff alleges that in 2009, 2010, and partially in 2011, Legendary paid Sims a salary, contract payments, royalties, appearance fees, franchise fees and/or profits interest directly to Sims to use Sims' name, nicknames, image, voice, likeness, personality, history and memorabilia (collectively "publicity rights") in order to market the Billy Sims BBQ restaurants (Dkt. #1 at p. 5). On May 13, 2011, Sims signed a Consent to Register the names Billy Philly, Billy Burger, Billy Dog and Billy Chili with the United States Patent and Trademark Offices for Legendary. (Dtk. #9, Exhibit 2 at p. 22)

In October 2012, Legendary executed an Operating and Licensing Agreement ("Licensing Agreement") with BS20 to continue to use those same publicity rights to market the Billy Sims BBQ restaurants (Dkt. #9, Exhibit 2). The Licensing Agreement was executed in Oklahoma and is governed by Oklahoma law. *Id*. The Licensing Agreement between BS20 and Legendary was executed prior to the foreclosure of the federal tax liens against Defendant Sims (Dkt. #1 at ¶¶ 13-15).

In 2013, Legendary entered into a franchise agreement with Quality Brands, LLC ("Quality Brands"), to open a Billy Sims BBQ franchise restaurant (Dkt. #21 at p. 2). Quality Brands is a limited liability company organized under the laws of Oklahoma and the franchise agreement between Legendary and Quality Brands is governed by Oklahoma law (Dkt. #21, Exhibit 3). Quality Brands selected Texarkana, Texas, as the location for its franchise store, which Legendary approved under the terms of the franchise agreement (Dkt. #23 at p. 2). Quality Brands leased the premises located at 3747 Mall Lane, Texarkana, Texas, and opened its Billy Sims BBQ restaurant.

In 2014, Quality Brands transferred its franchisee interest in the Texarkana restaurant to David and Melanie Price, as owner of Blue Ribbon BBQ, LLC (Dkt. #21, Exhibit 3; Dtk. #23 at p. 2). As part of this asset purchase, Blue Ribbon BBQ, LLC, took over the lease agreement for the Texarkana restaurant and oversaw the operations of the Texarkana restaurant.

The Texarkana restaurant was the only Billy Sims BBQ franchise restaurant located in the State of Texas. In May 2015, the Texarkana restaurant permanently closed. There have been no other Billy Sims franchise restaurants located in Texas since.

Plaintiff alleges Sims has outstanding federal income tax liabilities for the 2001, 2004-2011, and 2014 tax years. On July 13, 2017, Plaintiff filed this suit to reduce to judgment and collect the outstanding tax assessments against Sims (Dkt. #1). Plaintiff also seeks to enforce the federal tax liens upon Sims' property, including Sims' rights to payments owed from Legendary and any rights Legendary obtained from Sims and BS20 to use Sims' personal assets. Thus, because Legendary has an interest in Sims' assets, Plaintiff named Legendary as a defendant.

On August 3, 2017, Legendary filed its motion to dismiss for lack of personal jurisdiction and for failure to state a claim. (Dtk. #9). Plaintiff filed its response on August 17, 2017 (Dkt. #17). On August 24, 2017, Legendary filed its reply (Dtk. #21). Plaintiff filed its sur-reply on August 31, 2017 (Dkt. #23).

## LEGAL STANDARD

*Motion to Dismiss for Lack of Personal Jurisdiction*

In determining whether there is personal jurisdiction over a non-resident defendant, a two-step analysis is conducted. *Ham v. La Cinega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993). First, absent a controlling federal statute regarding service of process, the court must determine

3

whether the long-arm statute of the forum state permits the exercise of jurisdiction. *Id.* Second, it must be determined whether the exercise of jurisdiction comports with due process. *Id.*

The Texas long-arm statute extends to the limits of due process under the Constitution. *Command-Aire Corp. v. Ontario Mechanical Sales and Service, Inc.*, 963 F.2d 90, 93 (5th Cir. 1992). As a result, the determination of a non-resident's amenability to personal jurisdiction under the Texas long-arm statute is a federal style inquiry as to whether jurisdiction comports with federal constitutional guarantees. *Bullion v. Gillespie*, 895 F.2d 213, 216 (5th Cir. 1990). The due process clause permits the exercise of personal jurisdiction over a nonresident defendant when (1) the defendant has purposefully availed himself of the benefits and protections of the forum state; and (2) the exercise of jurisdiction over the defendant does not offend "traditional notions of fair play and substantial justice." *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999) (quoting *Int'l Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945)).

General jurisdiction occurs when "a State exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 414 n.9 (1984). General jurisdiction exists only when the defendant's contacts with the State constitute "continuous and systematic" general contacts with the forum. *Id.* at 416. "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)).

A corporation is fairly regarded as at home in its place of incorporation and principal place of business. *Id.* at 760. General jurisdiction "calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide. A corporation that operates in many places can scarcely

4

be deemed at home in all of them." *Id.* at 762 n.20. Other courts have held that the *Daimler* "essentially at home" standard applies to unincorporated associations. *See Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 332 (2d Cir. 2016) ("*Daimler*'s reasoning was based on an analogy to general jurisdiction over individuals, and there is no reason to invent a different test for general personal jurisdiction depending on whether the defendant is an individual, a corporation, or another entity"); *Livnat v. Palestinian Auth.*, 82 F. Supp. 3d 19, 29 (D.D.C. 2015).

Specific jurisdiction exists where the plaintiff alleges a cause of action that grows out of or relates to a contact between the defendant and the forum state. *Helicopteros*, 466 U.S. at 414 n. 8. For the Court to exercise specific jurisdiction, it must find: (1) that the foreign defendant purposely directed his activities at residents of the forum and (2) the cause of action arose from or is connected with such activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985). Specific jurisdiction may be established if the defendant's conduct constitutes only one act in the forum state and that act is substantially related to the suit. *See Moncrief Oil Int'l v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007). However, it is essential that in each case there is an act by which the defendant purposefully availed itself of the benefits and protections of the forum state. *Hanson v. Denkla*, 357 U.S. 235, 253 (1958).

After a non-resident defendant files a motion to dismiss for lack of personal jurisdiction, the party seeking to invoke the court's jurisdiction bears the burden of establishing the district court's jurisdiction. *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000). When, as here, no evidentiary hearing is conducted, "the party seeking to assert jurisdiction must present sufficient facts as to make out only a prima facie case supporting jurisdiction." *Id.* (citation omitted). When considering the motion to dismiss, the court must accept as true the plaintiff's

uncontroverted allegations and resolve all factual disputes in favor of plaintiff. *Id.* (citations omitted).

*Motion to Dismiss for Failure to State a Claim*

A Rule 12(b)(6) motion to dismiss argues that, irrespective of jurisdiction, the complaint fails to assert facts that give rise to legal liability of the defendant. The Federal Rules of Civil Procedure require that each claim in a complaint include "a short and plain statement…showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The claims must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

Rule 12(b)(6) provides that a party may move for dismissal of an action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The Court must accept as true all well-pleaded facts contained in the plaintiff's complaint and view them in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In deciding a Rule 12(b)(6) motion, "[f]actual allegations must be enough to raise a right of relief above the speculative level." *Twombly*, 550 U.S. at 555; *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009). "The Supreme Court recently expounded upon the *Twombly* standard, explaining that '[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Gonzalez*, 577 F.3d at 603 (quoting *Iqbal*, 556 U.S. at 678). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "It follows, that 'where the well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.*

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court identifies conclusory allegations and proceeds to disregard them, for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 681. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.* "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009). This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

In determining whether to grant a motion to dismiss, a district court generally may not "go outside the complaint." *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003). However, a district court may consider documents attached to a motion to dismiss if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim. *Id.*

## ANALYSIS

*Motion to Dismiss for Lack of Personal Jurisdiction*

Pursuant to 26 U.S.C. § 7403(b), in an action such as this to enforce a tax lien, "[a]ll persons having liens upon or claiming any interest in the property involved in [the] action shall be made parties thereto." 26 U.S.C. § 7403(b). Legendary is alleged to have an interest in Sims' property, thus, it is a proper party to this lawsuit. However, this Court must still maintain personal jurisdiction over it.

7

Legendary contends that the Court should dismiss Plaintiff's Complaint because it is not subject to the Court's jurisdiction under Federal Rule of Civil Procedure 12(b)(2). Specifically, Legendary contends that it is not subject to the Court's general jurisdiction because their contacts are not systematic and continuous (Dkt. #9 at p. 5). Furthermore, Legendary claims that specific jurisdiction is lacking because their contacts with Texas, relating to the transaction at issue, do not rise to the level of minimum contacts (Dkt. #9 at p. 5–7).

A nonresident defendant's minimum contacts with the forum state can establish either specific jurisdiction or general jurisdiction. Specific jurisdiction exists if the Court determines that (1) the foreign defendant purposely directed his activities at residents of the forum state, and (2) the cause of action arose from or is connected with such activities. *Burger King Corp.*, 471 U.S. at 472-73. "General jurisdiction, on the other hand, will attach where the nonresident defendant's contacts with the forum state, although not related to the plaintiff's cause of action, are 'continuous and systematic.'" *Alpine View*, 205 F.3d at 215 (citing *Helicopteros*, 466 U.S. at 415–16).

To make a prima facie showing of general jurisdiction, Plaintiff must produce facts that affirmatively shows that Legendary's "contacts with Texas that are unrelated to the litigation are sufficient to satisfy due process requirements." *Id.* at 217 (citing *Felch v. Transportes Lar-Mex SA DE CV*, 92 F.3d 320, 327 (5th Cir. 1996)). "Those unrelated contacts must be substantial, continuous and systematic. *Id.* The inquiry is not whether a corporation's "in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Daimler*, 134 S. Ct. at 761 (citing *Goodyear*, 564 U.S. at 919). The Fifth Circuit has noted that "general jurisdiction can be assessed by evaluating contacts of the defendants with the forum

over a reasonable numbers of years, up to the date the suit was filed." *Alpine View*, 205 F.3d at 217 (quoting *Access Telecom, Inc. v. MCI Telecomm. Corp.*, 197 F.3d 694, 717 (5th Cir. 1999)).

After examining the facts currently before the Court, it is clear that Plaintiff cannot meet their burden to show that the Legendary's contacts with Texas are sufficient to establish general jurisdiction. Legendary is a limited liability company organized under the laws of the State of Oklahoma, with its principle place of business in Tulsa, Oklahoma. It has no offices or employees in Texas and does not do business in Texas (Dkt. #9 at p. 2). At best, the facts establish that Legendary conducted business in Texas in 2014 and 2015, through a franchise agreement with Quality Brands, LLC, and subsequently with Blue Ribbon BBQ, LLC, both of whom are Oklahoma limited liability companies (Dkt. #21). Legendary does not have sufficient ties to Texas for general personal jurisdiction to attach.

However, the Court must also consider whether it can exercise specific jurisdiction over Defendants. Specific jurisdiction exists where the plaintiff alleges a cause of action that grows out of or relates to the contacts between the defendant and the forum state. *Helicopteros*, 466 U.S. at 414 n. 8. The Fifth Circuit has concluded that "specific jurisdiction is a claim-specific inquiry: 'A plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim.'" *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009) (quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006)).

The Fifth Circuit follows a three-step analysis in determining whether a court has specific personal jurisdiction: "(1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out

of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009) (quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006)). "The 'minimum contacts' inquiry is fact intensive and no one element is decisive; rather the touchstone is whether the defendant's conduct shows that it 'reasonably anticipates being haled into court.'" *Id.* (quoting *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 470 (5th Cir. 2006)). Even a single act by a defendant may establish specific jurisdiction if the act in the forum state is substantially related to the suit. *See Moncrief Oil Int'l v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007).

Once a plaintiff establishes that the defendant had minimum contacts with the forum state sufficient to permit specific jurisdiction, the burden shifts to the defendant to prove that the exercise of jurisdiction is not fair or reasonable. *McFadin*, 587 F.3d at 759. In this inquiry, the Court examines five factors: (1) the burden on the nonresident defendant; (2) the forum state's interests; (3) the plaintiff's interest in securing relief; (4) the interest of the interstate judicial system in the efficient administration of justice; and (5) the shared interest of the several states in furthering fundamental social policies. *Burger King v. Rudzewicz*, 471 U.S. 462, 477 (1985). "It is rare to say the assertion of jurisdiction is unfair after minimum contacts have been shown." *McFadin*, 587 F.3d at 760 (quoting *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999)).

Legendary executed the Licensing Agreement with BS20 to use Sims' publicity rights in order to market the Billy Sims BBQ restaurants. The Licensing Agreement between Legendary and BS20 was executed in Oklahoma and is governed by Oklahoma law. Although Sims is a Texas resident, this conduct does not establish specific personal jurisdiction over Legendary.

*See Chang v. Virgin Mobile USA, LLC*, No. 3:07-CV-1767-D, 2009 WL 111570, at *4 (N.D. Tex. Jan. 16, 2009). "[M]erely contracting with a resident of the forum state does not establish minimum contacts." *Moncrief Oil Int'l Inc. v. Oao Gazprom,* 481 F.3d 309, 311 (5th Cir. 2007) (citing cases). The choice-of-law clause in the Licensing Agreement further supports the conclusion that Legendary did not intend to avail itself of the privileges of doing business in Texas and believed that any dispute over the contract would be resolved under Oklahoma law.

Furthermore, "a [party's] unilateral activities in Texas do not constitute minimum contacts [in a breach of contract case] where the defendant did not perform any of its obligations in Texas, the contract did not require performance in Texas, and the contract is centered outside of Texas." *Id.* at 312 (citing *Hydrokinetics, Inc. v. Alaska Mech., Inc.,* 700 F.2d 1026 (5th Cir. 1983)). Here, the License Agreement did not require Legendary to perform any of its obligations in Texas; on the contrary, the license purportedly permitted the use of Sims' right of publicity to be used in Billy Sims BBQ restaurants anywhere in the world. Sims' Texas location was also irrelevant to the performance of the contract. *See id.* at 313 (holding that plaintiff's Texas location was "irrelevant" and did not establish minimum contacts where there was "no indication that the location of the [party's] performance mattered"). The mere fortuity that a party to a contract happens to be a Texas resident, coupled with that party's unilateral performance in the forum state, is not enough to confer jurisdiction. *See Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986) (holding that in a contract to drill for oil and gas in Oklahoma, it was a "mere fortuity" that defendant happened to be a resident of Texas); *Renoir v. Hantman's Assocs., Inc.,* 230 Fed. Appx. 357, 360 (5th Cir. 2007) ("[Defendant's] only contact with Texas came about by

the fortuity that [the] collection [it contracted to auction in Maryland] happened to be owned by the [plaintiffs] in Texas.").

The fact that Legendary paid Sims directly or that the License Agreement called for payments to be deposited in Texas is also insufficient to show that Legendary had minimum contacts with Texas. "[T]he combination of mailing payments to the forum state, engaging in communications related to the execution and performance of the contract, and the existence of a contract between the nonresident defendant and a resident of the forum are insufficient to establish the minimum contacts necessary to support the exercise of specific personal jurisdiction over the nonresident defendant." *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 344 (5th Cir. 2004) (citing *Holt,* 801 F.2d at 778).

Because none of these contacts on which Plaintiff relies establishes sufficient minimum contacts between Legendary and the State of Texas, the court cannot constitutionally exercise personal jurisdiction over Legendary. "Because [the Court] find[s] that the first due process condition of minimum contacts was not satisfied, [the Court] need not address whether the exercise of personal jurisdiction in this case would offend traditional notions of fair play and substantial justice." *S. Cooper, Inc. v. Specialloy, Inc.,* 2000 WL 1910176, at *4 (5th Cir. 2000). Therefore, Plaintiff has failed to offer facts to show a prima facie case supporting personal jurisdiction over Legendary.

## CONCLUSION

It is therefore **ORDERED** that Defendant Legendary Q Brands, LLC's Special Appearance and Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) (Dkt. #9) is hereby **GRANTED** and Legendary Q Brands, LLC is hereby **DISMISSED** without prejudice.

**IT IS SO ORDERED**.

**SIGNED this 14th day of November, 2017.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE